NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12594

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 496501  vs.   SEX
OFFENDER REGISTRY BOARD & others.[1]


Essex.      February 5, 2019. - July 17, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Sex Offender.  Sex Offender Registration and Community
    Notification Act.  Evidence, Sex offender.  Practice,
    Civil, Sex offender, Standard of proof.



    Civil action commenced in the Superior Court Department on
July 15, 2016.

    The case was heard by Jeffrey T. Karp, J., on a motion for
partial judgment on the pleadings, and entry of final judgment
was ordered by Timothy Q. Feeley, J.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Kate A. Frame for the plaintiff.
    John P. Bossé for the defendant.
    Rebecca Rose, for Committee for Public Counsel Services,
amicus curiae, submitted a brief.

_____

    [1] The general counsel of the Sex Offender Registry Board
(SORB) and the chair of SORB.

GANTS, C.J.  The plaintiff (Doe) appeals from a Superior Court judgment affirming a Sex Offender Registry Board (SORB or board) decision to classify him as a level two sex offender after he was convicted in 2015 of two counts of open and gross lewdness for displaying his genitals to a neighbor through the window of his home.  Doe presents three challenges to the level two classification.  First, he contends that SORB does not have jurisdiction to classify him as a "sex offender," as defined in G. L. c. 6, § 178C, because he has not previously been convicted of open and gross lewdness and only a "second and subsequent . . . conviction for open and gross lewdness" permits classification as a sex offender.  Second, he contends that a hearing examiner cannot classify an individual as a level two sex offender based on a determination that the offender poses a moderate risk of reoffending, without also making an express determination that the degree of dangerousness posed by this individual is such that a public safety interest is served by having his or her registration information made publicly available on the Internet.  See G. L. c. 6, §§ 178D, 178K (2) (b).  Third, he contends that there was not substantial evidence to support his level two classification.

We conclude, first, that SORB has jurisdiction to classify Doe as a sex offender because a previous charge of open and

gross lewdness against Doe was resolved through a conviction and not a continuance without a finding.

Second, we conclude that in order to classify an individual as a level two sex offender, the hearing examiner is required to make three explicit determinations by clear and convincing evidence: (1) that the risk of reoffense is moderate; (2) that the offender's dangerousness, as measured by the severity and extent of harm the offender would present to the public in the event of reoffense, is moderate; and (3) that a public safety interest is served by Internet publication of the offender's registry information. This holding is consistent with the relevant statutes and regulations, and avoids due process concerns that could arise if an individual's information were published online in the absence of these determinations.

Third, having examined the evidence and the hearing examiner's findings in light of this three-prong test, we conclude that there was not substantial evidence to support her decision to classify Doe as a level two sex offender by clear and convincing evidence. Doe's dangerousness could not reasonably be characterized as moderate, and it was not reasonable to conclude, based on the hearing examiner's findings, that Internet publication of Doe's registry information would serve a public safety interest. We therefore vacate and set aside the decision of the Superior Court judge

affirming SORB's classification of Doe as a level two sex offender, and remand this matter to the Superior Court for further proceedings consistent with this opinion.[2]

Background. 1. Sex offender classification process. The sex offender registry law, as amended in 1999, established a sex offender registration system for those in the Commonwealth convicted of a "sex offense," as defined in G. L. c. 6, § 178C. See G. L. c. 6, §§ 178C-178Q; St. 1999, c. 74. The purpose of the law was "to protect . . . the vulnerable members of our communities from sexual offenders," and particularly from "sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior." St. 1999, c. 74, emergency preamble & § 1.

Pursuant to the sex offender registry law, the board prepares a recommended classification for every sex offender. See G. L. c. 6, § 178L (1). Where a sex offender challenges SORB's recommended classification, he or she is entitled to request an evidentiary hearing. See G. L. c. 6, § 178L (1) (a). After this hearing, a SORB-designated hearing examiner "shall consider the relevant and credible evidence and reasonable inferences derived therefrom to determine: (a) the offender's risk of reoffense; (b) the offender's dangerousness as a

---

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.

function of the severity and extent of harm the offender would present to the public in the event of reoffense; and (c) in consideration of the foregoing, whether and to what degree public access to the offender's personal and sex offender information, pursuant to G. L. c. 6, § 178K, is in the interest of public safety."  803 Code Mass. Regs. § 1.20(2) (2016). Based on these determinations, the hearing examiner must issue a final decision classifying the sex offender into one of three "levels of notification."  Moe v. Sex Offender Registry Bd., 467 Mass. 598, 601 (2014), quoting G. L. c. 6, § 178K (2).  All sex offender risk classifications must be established by clear and convincing evidence.  Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 314 & n.27 (2015) (Doe No. 380316).

"Where the board determines that the risk of reoffense is low and the degree of dangerousness posed to the public is not such that a public safety interest is served by public availability, it shall give a level [one] designation to the sex offender."  G. L. c. 6, § 178K (2) (a).  Level one offenders' registry information is not disseminated to the general public or published on the Internet.  See G. L. c. 6, §§ 178D, 178K (2) (a).  "Where the board determines that the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public

availability of registration information, it shall give a level [two] designation to the sex offender."  G. L. c. 6, § 178K (2) (b).  Level two offenders' registry information is "available for inspection by the general public in the form of a comprehensive database published on the [I]nternet."  G. L. c. 6, § 178D.  And "[w]here the board determines that the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination, it shall give a level [three] designation to the sex offender."  G. L. c. 6, § 178K (2) (c).  Level three offenders' registry information is available for public inspection on the Internet and also subject to "active[] dissemination" by the police or the board.  See G. L. c. 6, §§ 178D, 178K (2) (c).  See also 803 Code Mass. Regs. § 1.28(1) (2016).

Any individual who disagrees with the board's final classification is entitled to file a complaint for judicial review in the Superior Court.  See G. L. c. 6, § 178M; G. L. c. 30A, § 14.

2.  Doe's offenses.  Prior to his 2015 guilty plea, Doe had been charged with open and gross lewdness on three occasions: once in 1990, once in 1991, and once in 1996.  At the hearing, the police report regarding the 1990 charge was not in the record; the criminal complaint alleged only that Doe committed

the crime of open and gross lewdness in the presence of two women.  But Doe testified before the hearing examiner that the charge arose out of an incident during which he exposed his genitals to two strangers who were walking by while he sat inside his motor vehicle.  As described infra, the parties disagree as to whether Doe was found guilty of this charge or whether the charge was continued without a finding.  The 1991 charge was dismissed for lack of prosecution and was not considered by the hearing examiner.  The 1996 charge arose out of a report by the victim that Doe, who was on the opposite side of a train platform from her, had his pants and underwear pulled down and was playing with his genitals as he walked across the tracks toward her.  Doe testified before the hearing examiner that he was taking the train home after drinking with friends, and was seen by a woman after having pulled his pants and underwear down on the platform.  This case was continued without a finding in 1997 and subsequently dismissed.

During his classification hearing, Doe admitted that he had exposed himself on six or seven other occasions between 1991 and 1996, none of which resulted in an arrest or a court proceeding. There is no evidence that Doe continued to expose himself in the time between his 1996 offense and his 2011 offense.

In June 2014, Doe's nineteen year old female neighbor reported to the police that, while she was inside her home, Doe

had exposed himself to her from inside his home on multiple occasions, three of which she described in further detail. The first reported incident took place in 2011, when Doe's neighbor was approximately fifteen years old. At this time, she observed Doe standing nude beside a window. She reported that she was able to see Doe's genitals because the window shade "was only [three-quarters] of the way down." Doe denied any recollection of this incident. He was initially charged with open and gross lewdness, but pleaded guilty to the lesser included offense of indecent exposure, in violation of G. L. c. 272, § 53. Indecent exposure is not a sex offense under the sex offender registry law. See G. L. c. 6, § 178C (listing all offenses that qualify as "[s]ex offense" under sex offender registry law).

The second incident occurred in May 2014. Again, the neighbor observed Doe standing nude beside a partially-covered window and exposing his penis. The third incident took place the following month, when the neighbor saw Doe standing nude in his kitchen and touching his penis in a manner consistent with masturbation. Doe's neighbor stated that each of these events occurred at night, and that she could see the defendant because his lights were on.

In response to his neighbor's allegations, Doe voluntarily spoke with a Haverhill police detective on June 18, 2014. According to the incident report relied upon by the hearing

examiner, the officer informed Doe that his neighbor had seen him naked inside his home; Doe responded that this was "probably true." When the officer advised Doe that his neighbor believed the exposure to be purposeful, Doe responded that he "would agree with that." He likewise agreed that his neighbor had seen him masturbating in his kitchen. Doe stated that the victim -- whom he had seen changing her clothing and engaging in sexual acts on her living room couch -- was a "trigger" for him, and that he was having increasing difficulty controlling his urges. He agreed with the officer that the victim's exposure was likely accidental, but his exposure had been intentional. Doe further stated that he "had a problem" for which he had sought treatment in the past, that he had "been good for a long time," and that he now only exposed himself when he was indoors. He said that he was "just an exhibitionist," and that he had never touched or hurt anybody. He further stated that he was building a house on several acres of land in New Hampshire to get away from any potential "triggers."

In March 2015, Doe pleaded guilty to two counts of open and gross lewdness arising out of the two incidents that took place in May and June 2014. He was sentenced to two years of supervised probation with conditions that he abstain from using drugs and alcohol and that he participate in a sex offender

therapy program, which, according to his therapist, he successfully completed.

3. Doe's classification and appeals. In June 2015, SORB recommended that Doe be classified as a level two sex offender. Doe challenged the recommended classification, and an evidentiary hearing took place on May 3, 2016. On July 15, the hearing examiner concluded that Doe "presents a moderate risk to reoffend and that a public safety interest is served by public access to his sex offender registry information." She therefore ordered that Doe register as a level two sex offender. In reaching her conclusion, the hearing examiner "acknowledge[d] that [Doe's] offenses are not gravely dangerous," but found them to be "quite upsetting to his multiple [v]ictims." She further found that in this case, "community availability of [Doe's] sex offender information might have prevented the circumstances which contributed to his reoffenses," as his neighbors "might have been more modest in the rooms facing his home" had they "known of his sex offender history." The hearing examiner therefore found that Doe's "other neighbors, present and future, deserve this awareness, and that posting his sex offender information on the [I]nternet is necessary for public safety."

On the same day that the hearing examiner released her decision, Doe commenced this action seeking judicial review in the Superior Court. He also filed a motion for a preliminary

injunction to stay the publication of his registry information on the Internet, which a Superior Court judge allowed.  In July 2017, Doe filed a motion for partial judgment on the pleadings, which SORB opposed.  A different Superior Court judge denied Doe's motion and affirmed SORB's final decision classifying Doe as a level two sex offender.  The judge who granted the preliminary injunction then ruled that, because Doe's level two classification had been affirmed, the preliminary injunction that stayed online publication would expire ten days after judgment entered.

Doe filed a notice of appeal from the Superior Court judge's decision denying his motion for judgment on the pleadings, as well as a motion to extend the preliminary injunction pending appeal.  A single justice of the Appeals Court stayed Internet publication of his information pending resolution of this case.  We granted Doe's application for direct appellate review.

Discussion.  1.  Standard of review.  A reviewing court may set aside or modify SORB's classification decision where it determines that the decision is in excess of SORB's statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence.  See G. L. c. 30A, § 14 (7) (listing these and other reasons for vacating decision of agency).  In reviewing SORB's

decisions, we "give due weight to the experience, technical competence, and specialized knowledge of the agency." Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 602 (2013), quoting G. L. c. 30A, § 14 (7).

2. SORB jurisdiction over Doe. A single conviction of open and gross lewdness, in violation of G. L. c. 272, § 16, is not a "sex offense" that permits classification of an individual as a sex offender; only a "second and subsequent adjudication or conviction" of that offense permits such classification. G. L. c. 6, § 178C. Doe argues, and SORB concedes, that Doe's two 2015 convictions of open and gross lewdness would not themselves trigger an obligation to register because those convictions occurred in the same judicial proceeding. See Commonwealth v. Wimer, 480 Mass. 1, 4 (2018) (where "defendant committed two separate incidents on two different occasions" but "resulting two convictions occurred in the same judicial proceeding," second conviction does not qualify as "subsequent conviction" under G. L. c. 6, § 178C). Therefore, SORB has jurisdiction to classify Doe as a sex offender only if his 1990 open and gross lewdness charge, which was resolved in 1991, resulted in a conviction rather than a continuance without a finding.

We conclude that the hearing examiner and the Superior Court judge correctly determined that Doe qualifies as a sex offender because he was found guilty of open and gross lewdness

in 1991. The docket sheet for this case shows that on October 16, 1991, Doe admitted to sufficient facts and, based on the letter "G" in the "Finding" column, that a finding of guilt was entered. The box for a continuance without a finding was not checked. The docket further shows that Doe was sentenced to two years of probation on this charge. If his case had been continued without a finding, one would expect a check mark in the box indicating that the case against Doe was dismissed at the request of probation at the conclusion of those two years, but there is no such check. Doe testified at his hearing that he was advised that this case had concluded in a continuance without a finding, and that he need not report a conviction when he applied for employment. If this advice was given, the docket contradicts its accuracy. Therefore, we conclude that Doe's 2015 convictions were "second and subsequent" to his 1991 conviction, and that SORB had jurisdiction to classify Doe as a sex offender.

3. Required determinations for level two classification. General Laws c. 6, § 178K (2) (b), provides that, to classify an individual as a level two sex offender, the board must determine (1) "that the risk of reoffense is moderate" and (2) that "the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information." SORB's regulations recognize that

fulfilling this statutory mandate requires the hearing examiner, based on "the relevant and credible evidence and reasonable inferences derived therefrom[,] to determine:  (a) the offender's risk of reoffense; (b) the offender's dangerousness as a function of the severity and extent of harm the offender would present to the public in the event of reoffense; and (c) in consideration of the foregoing, whether and to what degree public access to the offender's personal and sex offender information . . . is in the interest of public safety."  803 Code Mass. Regs. § 1.20(2).  The SORB regulations therefore require a hearing examiner to make three distinct and explicit determinations in classifying a sex offender.  We now consider each of the three determinations necessary to support a level two classification.

a.  Risk of reoffense.  Section 178K (2) (b) explicitly provides that a level two offender's risk of reoffense must be "moderate."  Although not explicitly stated either in the statute or regulations, we understand that this determination of risk focuses solely on the risk of sexual recidivism, that is, the risk that the offender will commit a new sexual offense, not the risk that he or she will commit any criminal offense.  See Doe, Sex Offender Registry Bd. No. 326573 v. Sex Offender Registry Bd., 477 Mass. 361, 367 (2017) (SORB reclassification decisions made based on information relevant to risk of "sexual

recidivism"); 803 Code Mass. Regs. § 1.33 (2016) (discussing "strongest predictors of sexual recidivism").

b. Degree of dangerousness. An offender's dangerousness, as described in 803 Code Mass. Regs. § 1.20(2), is measured by "the severity and extent of harm" that would result if the offender were to commit a new sex offense. Determining an individual's degree of dangerousness therefore requires a hearing examiner to consider what type of sexual crime the offender would likely commit if he or she were to reoffend. Pragmatically, because past is prologue, a hearing examiner would make this determination based on the sexual crime or crimes that the offender committed in the past. Where there is a history of different sexual offenses, the primary focus would likely be on the crime or crimes recently committed by the offender. See Doe, Sex Offender Registry Bd. No. 7083 v. Sex Offender Registry Bd., 472 Mass. 475, 482 (2015) (Doe No. 7083) ("SORB's regulations provide that a sex offender's current . . . dangerousness to the community must be considered" [emphasis added]). A hearing examiner, however, may consider an offender's older sexual offenses where they are relevant to a holistic assessment of the offender's current degree of dangerousness, or where the offender has not had recent opportunity to commit sexual offenses because he or she has been in custody.

Neither the statute nor the regulations specify the degree of dangerousness required for a level two classification. We conclude, based on the statutory and regulatory context, the adverse consequences of Internet publication for an offender, and our presumption that the Legislature intends its statutes to pass constitutional muster, that a moderate degree of dangerousness is required for the hearing examiner to classify an individual as a level two sex offender.

From the statute, we know that the board can impose a level two sex offender classification only where it finds that the offender poses a "degree of dangerousness" "such that a public safety interest is served by public availability of registration information." G. L. c. 6, § 178K (2) (b). For a level two offender, public availability of registration information means that the offender's information will be published on SORB's website, where it is viewable by any adult member of the public at any time. See G. L. c. 6, § 178D; Moe, 467 Mass. at 605. If an offender's degree of dangerousness is low, it is difficult to see how the public interest would be served by Internet publication, especially considering the "dramatic consequences" that classification as a level two offender has "for [the offender's] liberty and privacy interests." See Doe No. 380316, 473 Mass. at 311.

As this court has previously recognized, Internet publication of an individual's sex offender registry information "poses a risk of serious adverse consequences to that offender, including the risk that the sex offender will suffer discrimination in employment and housing, and will otherwise suffer from the stigma of being identified as a sex offender, which sometimes means the additional risk of being harassed or assaulted." Moe, 467 Mass. at 604. See Doe No. 380316, 473 Mass. at 307-308 ("Internet dissemination exposes offenders, through aggressive public notification of their crimes, to profound humiliation and community-wide ostracism" [quotation, citation, and alteration omitted]); Poe v. Sex Offender Registry Bd., 456 Mass. 801, 813 (2010), quoting Doe v. Attorney Gen., 426 Mass. 136, 144 (1997) ("Classification and registration entail possible harm to a sex offender's earning capacity, damage to his reputation, and, 'most important, . . . the statutory branding of him as a public danger'"). Registry information posted on the Internet may be obtained anonymously from the comforts of one's own home, and republished on public websites not subject to SORB's control or to the warnings and certifications required by law to be provided on SORB's website. Moe, 467 Mass. at 605. See G. L. c. 6, § 178D. And even if a sex offender's information is later removed from SORB's website because the individual is released from the obligation to

register or reduced to a level one classification, his or her information would likely continue to exist on private websites, easily discoverable through a generic online search.  Moe, supra at 605-606.  See Note, The Right to Be Forgotten, 64 Hastings L.J. 257, 259 (2012) ("information posted on the Internet is never truly forgotten").

Due process concerns could be implicated if we were to interpret the statute to allow Internet publication of registry information for individuals whose degree of dangerousness is anything less than moderate.  Cf. Doe No. 380316, 473 Mass. at 303, citing Mathews v. Eldridge, 424 U.S. 319 (1976).  "An individual's ongoing duty to register as a sex offender implicates significant liberty and privacy interests for as long as the individual is required to register as a sex offender." Doe, Sex Offender Registry Bd. No. 76819 v. Sex Offender Registry Bd., 480 Mass. 212, 219 (2018).  And where registration also means Internet publication, the liberty and privacy interests take a quantum leap.  "Deprivation of greater individual liberty interests requires greater procedures and stronger countervailing State interests."  Doe, 426 Mass. at 140.  By interpreting G. L. c. 6, § 178K (2) (b), to require a determination of moderate dangerousness, we avoid such concerns and conform to our presumption that the Legislature intended its statutes to pass constitutional muster.  See Doe, Sex Offender

Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 771 (2008) ("statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score" [citation omitted]).

Our conclusion that a moderate degree of dangerousness is required for classification as a level two sex offender does not appear to be in tension with SORB's current practices -- hearing examiners who conclude that an individual is a level two sex offender often already find that the individual poses a moderate degree of dangerousness to the public, as well as a moderate risk to reoffend. See, e.g., id. at 767 (hearing examiner found offender posed moderate danger to public and moderate risk to re-offend); Doe, Sex Offender Registry Bd. No. 376575 v. Sex Offender Registry Bd., 90 Mass. App. Ct. 786, 788 (2016) (same); Doe, Sex Offender Registry Bd. No. 95318 v. Sex Offender Registry Bd., 80 Mass. App. Ct. 901, 902 (2011) (same). See also Commonwealth v. Feliz, 481 Mass. 689, 706 (2019) ("sex offenders designated level two . . . are deemed to pose a moderate . . . risk of reoffending and a concomitant degree of risk to the public"). Indeed, SORB declares in its appellate brief that the hearing examiner here found that Doe "presents . . . a moderate degree of dangerousness to the public," which

suggests that the board recognizes the need for such a determination to support a level two classification.

c. _Efficacy of Internet publication_. A hearing examiner's job is not complete upon determining an individual's risk to reoffend and degree of dangerousness. A third and distinct determination is required by SORB regulations: "whether and to what degree public access to the offender's personal and sex offender information . . . is in the interest of public safety." 803 Code Mass. Regs. § 1.20(2). An offender may not be given a level two classification unless "the degree of dangerousness posed to the public" by the offender "is such that a public safety interest is served by public availability of registration information," that is, by the availability of registration information on SORB's website. See G. L. c. 6, §§ 178D, 178K (2) (b). Whether a public safety interest will be "served" by Internet publication depends not only on the probability of reoffense and the danger posed by that potential reoffense, but also on the efficacy of online publication in protecting the public from being victimized by the offender. "The major premise underlying the sex offender act," after all, "is that disclosure of the presence of a sex offender in a particular community will help protect minors and other persons vulnerable to becoming victims of sex crimes." _Doe_ v. _Attorney Gen_., 426 Mass. at 139.

Our conclusion that the efficacy of online publication must be separately evaluated in light of a particular offender's risk of reoffense and degree of dangerousness is supported not only by the governing statute and regulations, but also by the court's reasoning in Moe, 467 Mass. at 615-616. In Moe, we held that it would be unconstitutional to apply amendments requiring level two offenders' information to be published on the Internet to offenders who received a level two classification before the effective date of those amendments. We reached this conclusion because at the time that those offenders were classified, level two offenders' information was explicitly protected from online publication. See id. at 603; G. L. c. 6, § 178D, as amended through St. 2003, c. 140, § 5. We explained that "[i]ncreasing the scope of public access to include Internet publication of the registry information of level two offenders may affect" SORB's determination as to what degree of public access to registry information is appropriate, "even if it does not affect SORB's evaluation of an offender's degree of dangerousness, because SORB may decide that public access with Internet publication is not warranted by the public safety risk posed by the specific offender's degree of dangerousness." Moe, 467 Mass. at 615. In other words, before the amendments became effective, a hearing examiner who made a level two classification would have known that public availability would

not include Internet publication when he or she determined, pursuant to G. L. c. 6, § 178K (2) (b), "that a public safety interest is served by public availability of registration information."  We recognized in Moe, supra at 615, that a hearing examiner might have reached a different conclusion on the same facts if he or she knew that public availability would include Internet publication.

The SORB regulations make clear that the determination of the degree to which public access to an offender's personal and sex offender information is in the interest of public safety must be made "in consideration" of the offender's risk of reoffense and dangerousness.  803 Code Mass. Regs. § 1.20(2).  Where a sexually violent offender presents a moderate risk to reoffend and a moderate degree of dangerousness, Internet publication will almost invariably serve a public safety interest by notifying potential victims of the risks presented by the offender in their geographic area.  But where a sexually nonviolent offender poses a moderate risk of committing moderately dangerous sexual offenses, there may be cases where Internet publication -- with its attendant consequences -- might not be justified because, in light of the particular public safety risk posed by the offender, it would not serve a public safety interest.  Cf. Doe v. Attorney Gen., 426 Mass. at 146 ("principle of fundamental fairness" requires fact finder to

consider whether "disclosure is not needed when balanced against the public need to which the sex offender act responded").  The efficacy of Internet publication in protecting potential victims must be determined based on the facts of each individual case.

We therefore require hearing examiners to ask whether, in light of the particular risks posed by the particular offender, Internet access to that offender's information might realistically serve to protect the public against the risk of the offender's sexual reoffense.  If the answer to this question is "no," classification as a level two offender is unjustified even where the offender poses a moderate risk to reoffend and a moderate degree of dangerousness.

d.  Need for explicit determinations supported by clear and convincing evidence.  In Doe No. 380316, 473 Mass. at 298, we held that "SORB is constitutionally required to prove the appropriateness of an offender's risk classification by clear and convincing evidence."  In a criminal case, where guilt must be established by proof beyond a reasonable doubt, we require that each element of the offense be established by proof beyond a reasonable doubt.  See Commonwealth v. Ferreira, 481 Mass. 641, 652-653 (2019).  In a sex offender classification case, where the classification must be established by clear and convincing evidence, and where SORB's ultimate determination is comprised of three elements that, pursuant to 803 Code Mass.

Regs. § 1.20(2), require separate findings, we similarly require that each element be established by clear and convincing evidence. That is, to find that an offender warrants a level two classification, the board must find by clear and convincing evidence that (1) the offender's risk of reoffense is moderate; (2) the offender's dangerousness is moderate; and (3) a public safety interest is served by Internet publication of the offender's registry information.

In determining whether these elements have been established by clear and convincing evidence, a hearing examiner may consider subsidiary facts that have been proved by a preponderance of the evidence. See Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 91 (2019). This, too, is consistent with the evidentiary rule in criminal cases that, although every element needs to be proved beyond a reasonable doubt, "preliminary questions of fact and subsidiary facts need only be proved by a preponderance of the evidence." Id. at 91-92, quoting Commonwealth v. Edwards, 444 Mass. 526, 543 (2005).

Even though the SORB regulation requires a hearing examiner to make three determinations before classifying a sex offender, see 803 Code Mass. Regs. § 1.20(2), SORB contends that the third of these determinations ("whether and to what degree public access to the offender's personal and sex offender information

. . . is in the interest of public safety") need not be made explicitly because it is implicit in the board's ultimate classification. We agree that, where a hearing examiner classifies an individual as a level two sex offender, it should be implicit in that decision that the hearing examiner has found by clear and convincing evidence that a public safety interest is served by Internet publication of the offender's registry information. See G. L. c. 6, § 178K (2) (b); Moe, 467 Mass. at 615. But, where such a finding is merely implicit, a reviewing court cannot be sure that the appropriate determination in fact was made, and was supported by clear and convincing evidence. See Doe No. 380316, 473 Mass. at 312 (SORB required to "make particularized, detailed findings concerning [offender's] classification"). Separate determinations supported by separate findings improve the rigor and accuracy of final classifications and provide for more effective judicial review. Where the SORB regulation itself calls for three separate determinations and where classification decisions affect substantial privacy and liberty interests, we conclude that it is appropriate to require the hearing examiner to make explicit his or her findings regarding each of these three elements, and to make clear that each determination is supported by clear and convincing evidence. See Doe No. 380316, supra (particularized, detailed

findings important features of "the process that offenders are due").

This requirement of explicit findings regarding all three elements applies not only to level two classifications, but also to level three classifications.[3]  See 803 Code Mass. Regs. § 1.20(2).  And the obligation to rest these determinations on clear and convincing evidence likewise applies to all classifications.  See Doe No. 380316, 473 Mass. at 314 n.27 ("clear and convincing standard should be applied to all sex offender risk classification levels, including level one").  The findings necessary to support the classification, of course, will differ depending on the level of classification.  See G. L. c. 6, 178K (2) (a)-(c).

We apply this requirement prospectively only; it does not apply to classifications that have been finally adjudicated. Where a prior classification decision fails to meet this

---

[3] Although determinations regarding three separate elements are required for all classifications, including level one, see 803 Code Mass. Regs. § 1.20(2) (2016), the determination regarding the third element is a foregone conclusion once a hearing examiner determines that the risk of reoffense or the degree of dangerousness is low.  See G. L. c. 6, § 178K (2) (a) ("Where the board determines that the risk of reoffense is low and the degree of dangerousness posed to the public is not such that a public safety interest is served by public availability, it shall give a level [one] designation to the sex offender"). This is because, to be classified as a level two sex offender, an individual must pose a moderate risk to commit new sex offenses and at least a moderate degree of dangerousness.  See G. L. c. 6, § 178K (2) (b).

requirement, and where an appeal is pending before the Superior Court or an appellate court, the court, in its discretion, may order that the classification decision be remanded to the hearing examiner.[4]  The hearing examiner will then issue an amended classification decision containing his or her express findings as to all three elements.  Unless the hearing examiner determines that a further hearing is required to evaluate an individual's risk of reoffense, an individual's degree of dangerousness, or the public safety interest served by Internet publication, amended decisions may be issued without holding a de novo hearing.

4.  <u>Hearing examiner's findings</u>.  The hearing examiner in this case classified Doe as a level two sex offender by clear and convincing evidence after concluding (1) that Doe posed a moderate risk of reoffense and (2) that online publication of his registry information was "necessary for public safety."  We now consider whether the hearing examiner's conclusion that clear and convincing evidence supports a level two

---

[4] We grant the court where the appeal is pending the discretion to determine whether to remand the case for explicit findings for two reasons.  First, whether SORB's existing findings are sufficiently explicit to enable proper review is a question best left to the reviewing court.  Second, even where the findings are not explicit, the underlying facts of the case may so clearly dictate the appropriate classification level that a reviewing court may determine that a remand for explicit findings is not necessary.

classification is itself supported by substantial evidence, that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion."  G. L. c. 30A, § 1 (6).

a.  Risk of reoffense.  With regard to the first element, we conclude that the hearing examiner's determination that Doe's risk of reoffense is moderate was supported by substantial evidence.  The hearing examiner found that Doe had "repetitively exposed himself to [his neighbor] over the past four years."  Doe himself admitted that he had had participated in multiple instances of exhibitionistic behavior, that he "had a problem," and that he was having increasing difficulty controlling his urges, which were triggered by seeing his neighbor naked and engaged in sexual acts.  These facts are adequate to support the hearing examiner's determination that Doe poses a moderate risk of reoffense.  See 803 Code Mass. Regs. § 1.33.

b.  Degree of dangerousness.  Although SORB claims in its brief that the hearing examiner found Doe to present "a moderate degree of dangerousness to the public," we discern no such determination.  Rather, as to the issue of dangerousness, the hearing examiner found that Doe's offenses "are not gravely dangerous," but "are quite upsetting to his multiple [v]ictims."  We decline SORB's invitation to characterize this as a determination of moderate dangerousness. We note that a required element of the crime of open and gross

lewdness is that the defendant has engaged in conduct that actually alarmed or shocked another person. See Commonwealth v. Maguire, 476 Mass. 156, 158 (2017). So, in every such case, the defendant's conduct will be "quite upsetting" to the victim. Yet the Legislature did not consider the harm arising from a single offense of open and gross lewdness to be sufficiently serious to qualify as a sex offense requiring the offender to register; only the second and subsequent conviction of that crime is a sex offense under the sex offender registry law. See G. L. c. 6, § 178C. The hearing examiner's conclusion that Doe's offenses were "quite upsetting," therefore, is insufficient to support a determination of moderate dangerousness.

We need not remand the matter to the hearing examiner to clarify her finding on this issue because, even if she were to find Doe's degree of dangerousness to be moderate, as the board claims she did, we conclude that such a determination is not supported by substantial evidence on this record.

"[O]ur decisions recognize that the registration statute requires SORB to base its classification determinations on a sex offender's 'current' risk to the community, in order to protect the offender's right to due process." Doe No. 7083, 472 Mass. at 483. See Doe v. Attorney Gen., 430 Mass. 155, 168 (1999) (individualized hearing required to determine whether offender

poses "present threat").  In determining whether an individual poses a moderate degree of dangerousness at the time of evaluation, a hearing examiner must consider "the severity and extent of the harm the offender would present to the public in the event of reoffense," 803 Code Mass. Regs. § 1.20(2)(b), which requires consideration of the nature and type of offense the offender would be likely to commit if he or she reoffended. This determination naturally takes place on a continuum -- contact offenders are generally more dangerous than noncontact offenders, and noncontact offenders whose actions are likely to create a fear of bodily harm are generally more dangerous than noncontact offenders whose actions are unlikely to generate such fear.  Cf. Commonwealth v. Suave, 460 Mass. 582, 587-588 (2011), quoting G. L. c. 123A, § 1 (under civil commitment statute for sexually dangerous persons, noncontact offender is not "menace to the health and safety of other persons" unless offender's "conduct will objectively put his [or her] victim in fear of bodily harm by reason of . . . a contact sex crime").

Therefore, while we agree with SORB that under some circumstances the danger posed by noncontact offenses such as open and gross lewdness might suffice to support a level two classification, see G. L. c. 6, § 178C, we conclude that an individual is generally unlikely to pose a moderate degree of dangerousness -- and thus to qualify as a level two sex offender

-- where his or her risk of reoffense relates only to noncontact offenses which do not put a victim in fear of bodily harm by reason of a contact sex offense. See Doe v. Attorney Gen., 425 Mass. 217, 221 & n.7 (1997) ("In a ranking of the sex offenses," open and gross lewdness "ranks at or near the bottom in seriousness" because it "involves neither physical harm nor the threat of physical harm"). Therefore, where a hearing examiner concludes (1) that an offender poses a risk only of noncontact offenses and (2) that those noncontact offenses are not likely to place a victim in reasonable apprehension of a contact offense, a hearing examiner will have to articulate why, given these circumstances, any classification above level one is justified.

Doe has never been accused or convicted of a contact sex offense. Nor has he been accused of committing any offense that was sexual in nature between 1996 and 2014, apart from a single instance of indecent exposure in 2011. During this incident, Doe's fifteen year old neighbor saw Doe's genitals through his bedroom window. Based on this offense alone, the hearing examiner found that Doe was an "Adult Offender with [a] Child Victim." The presence of this "high-risk" factor "is indicative of a high risk of reoffense and degree of dangerousness" under SORB's regulations. See 803 Code Mass. Regs. § 1.33. See id.

at § 1.33(3) ("Adult offenders who target children pose a heightened risk to public safety").

The hearing examiner erred in relying on the "Adult Offender with a Child Victim" high-risk factor when classifying Doe as a level two sex offender.  The sex offender registry law identifies six "criminal history factors indicative of a high risk of reoffense and degree of dangerousness posed to the public," including "whether the sex offender was an adult who committed a sex offense on a child."  G. L. c. 6, § 178K (1) (a) (iii).  "Sex offense" and "sex offense involving a child" are both defined terms under the sex offender registry law, and neither definition includes the offense of indecent exposure. See G. L. c. 6, § 178C.  Where the offense of indecent exposure is not a "sex offense," and where there is no evidence that Doe committed a crime involving a child at any other time, there is no statutory authority to support the hearing examiner's finding that this high-risk factor was applicable.  And although the SORB regulations refer broadly to "Adult Offender[s] with a Child Victim," and not specifically to adult offenders who commit sex offenses against children, there is no reason to believe that SORB intended its regulatory risk factor to encompass more crimes than the statutory factor on which it is based.  See Doe, Sex Offender Registry Bd. No. 27914 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 610, 618-619 (2012)

("adult offender with child victim" among "factors that the Legislature has specifically highlighted as indicative of a high risk to reoffend and a high degree of dangerousness").

Doe's two convictions of open and gross lewdness in 2015, like his conviction of indecent exposure, arose out of conduct that occurred when he was alone in his home, viewable to his neighbor only through a window. At the time of these offenses, Doe's neighbor was no longer a child; she was eighteen years old at the time of the first offense of open and gross lewdness, and nineteen years old at the time of the second offense. See 803 Code Mass. Regs. § 1.33(3) ("the Board shall consider any victim younger than [sixteen] years old as a 'child victim'"). The hearing examiner appeared to credit Doe's testimony that his conduct was triggered by seeing, from the windows of his own home, his neighbor naked in her home and engaged in sexual acts. Therefore, if Doe were to reoffend, the evidence supports a finding that the crime of reoffense would again be open and gross lewdness, committed in his own home, viewable only by his neighbors, which is the only type of sex offense that Doe has committed since 1996.

Where Doe's sex offenses were limited to open and gross lewdness, where there is no evidence that Doe committed any act of open and gross lewdness outside of his home in approximately twenty years, where the recent acts of open and gross lewdness

that triggered his classification hearing occurred only within his own home, and where Doe has never been found to have committed or attempted a contact sex offense, there is not substantial evidence to support a finding by clear and convincing evidence that Doe currently poses a moderate degree of dangerousness to the public.[5]

c. Internet publication. The hearing examiner in this case made an explicit factual finding regarding the likely efficacy of publishing Doe's information on the Internet. She stated that, "in this case, it is reasonable to consider that community availability of [Doe's] sex offender information might have prevented the circumstances which contributed to his reoffenses" -- namely, his neighbor's nudity and sexual behavior observable from Doe's home -- because, "[h]ad his neighbors known of his sex offender history, they might have been more

---

[5] We are likewise unconvinced that the other aggravating factors considered by the hearing examiner -- namely, the repetitive and compulsive nature of Doe's behavior, the fact that Doe's early offenses took place in public places, the fact that Doe's recent offenses took place in view of his neighbors, who were in "the public sphere," the relationship between Doe and his victims, the diversity of Doe's victims, and the number of victims -- could reasonably be considered adequate to support a determination that Doe is moderately dangerous based on the discussion supra. See 803 Code Mass. Regs. § 1.33 (2016). Because we conclude that a determination of moderate dangerousness was unsupported by the evidence, we need not consider Doe's specific arguments concerning the hearing examiner's "cherry-picking" of the evidence and her failure to afford proper weight to the expert evidence presented and to Doe's support system and stability in his community.

modest in the rooms facing his home." The hearing examiner therefore concluded that Doe's "other neighbors, present and future, deserve this awareness, and that posting his sex offender information on the [I]nternet is necessary for public safety." Having evaluated this determination, we conclude that it was not supported by substantial evidence.[6]

The hearing examiner's focus on the "modesty" of the victims, as opposed to their protection, was misplaced. Furthermore, there is no reason to believe that Internet publication of Doe's registry information would have been effective in warning Doe's neighbors to be "more modest in the rooms facing [Doe's] home." Pursuant to G. L. c. 6, § 178D, SORB's website provides the public with only certain information: the offender's name; the offender's home address and any secondary addresses; the offender's work address; the offender's age, sex, race, height, weight, eye color, and hair color; a photograph of the offender, if available; the offense for which the offender was convicted or adjudicated; the date of the conviction or adjudication; whether the offender has been

---

[6] We note that we are able to evaluate whether the hearing examiner's determination regarding the third element is supported by substantial evidence only because she made particularized findings as to how a public safety interest might be served by Internet publication of Doe's registry information. This illustrates the importance of requiring hearing examiners to make explicit findings as to each of the three required elements.

designated a sexually violent predator; and whether the offender is in compliance with his or her registration obligations. Knowing that Doe had been convicted of open and gross lewdness says nothing about Doe's potential "triggers," and therefore would not serve to warn Doe's neighbors to avoid conduct that potentially may trigger a future act of exhibitionism. Therefore, we conclude that there is not substantial evidence to support the hearing examiner's determination that "a public safety interest is served by public access to [Doe's] registration information." See G. L. c. 6, § 178K (2) (b).[7]

6. Conclusion. Because we conclude that classification as a level two sex offender is not supported by substantial evidence on this record, we vacate the Superior Court's judgment affirming SORB's level two classification and remand the matter to the Superior Court for issuance of a judgment declaring that there is substantial evidence only to support a level one classification.[8]

---

[7] Where the hearing examiner's explicit findings regarding the efficacy of Internet publication are not supported by substantial evidence, we do not consider whether other explicit factual findings reasonably could have been made in these circumstances that would support a determination by clear and convincing evidence that "a public safety interest is served by public availability of registration information." G. L. c. 6, § 178K (2) (b).

[8] Although we conclude that a level two classification was not supported by substantial evidence, the hearing examiner's findings, as described supra, do support a level one

So ordered.

---

classification.  Because we conclude that there was substantial evidence to support a level one classification by clear and convincing evidence, we need not address Doe's argument that SORB regulations improperly place the burden of proof on the sex offender where the offender seeks relief from the obligation to register.  See 803 Code Mass. Regs. § 1.29(1) (2016).