SUPREME JUDICIAL COURT 
 
 JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 527962 vs. SEX OFFENDER REGISTRY BOARD

 
 Docket:
 SJC-13736
 
 
 Dates:
 May 5, 2025 - September 11, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Franklin
 

 
 Keywords:
 Sex Offender. Sex Offender Registration and Community Notification Act. Evidence, Sex offender. Practice, Civil, Sex offender, Standard of proof, Judgment on the pleadings. Administrative Law, Substantial evidence, Standard of proof, Decision.
 
 

       Civil action commenced in the Superior
Court Department on March 16, 2022.
      The case was heard by Michael K. Callan,
J., on a motion for judgment on the pleadings.
      The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.
      Joshua M. Daniels for the plaintiff.
      David L. Chenail for the defendant.
      Elizabeth Caddick, for Committee for
Public Counsel Services, amicus curiae, submitted a brief.
      KAFKER, J. 
John Doe, Sex Offender Registry Board No. 527962 (Doe), pleaded guilty
to numerous sexual offenses committed against two girls, aged thirteen and
fourteen, when he was eighteen years old. 
After he challenged his initial level three classification, a hearing
examiner of the Sex Offender Registry Board (SORB or board) classified Doe as a
level two offender.  A Superior Court
judge affirmed, and Doe appealed.  
      Before us, Doe's central argument is that
the hearing examiner erred by considering Doe's multiple offenses as part of
his determination of Doe's degree of dangerousness.  More specifically, Doe contends that the hearing
examiner erroneously, and unconstitutionally, considered Doe's multiple
offenses as "other relevant information" bearing on Doe's
dangerousness pursuant to SORB's regulatory factor thirty-seven, and did so
even though SORB is precluded from consideration of multiple offenses, without
involvement of the criminal justice system in between such offenses, regarding
risk of reoffense pursuant to regulatory factor two, which applies to behavior
that is not only repetitive but also compulsive.  We conclude that dangerousness and risk of
reoffense involve separate inquiries, and multiple offenses may therefore be
considered differently under factors thirty-seven and two.  We also decline Doe's invitation to declare
the hearing examiner's application of factor thirty-seven unconstitutional
based on a lack of empirical evidence establishing a connection between
multiple offenses and dangerousness, given the limited and late-filed record on
this issue, and the Legislature's express requirement that the number of offenses
be considered in determining dangerousness. 
After consideration of Doe's other arguments, we affirm the board's
decision to classify Doe as a level two offender.[1] 
      Background.  1.  Sex
offender classification process. 
Pursuant to G. L. c. 6, § 178K, SORB is statutorily mandated to assess
the risk of reoffense and degree of danger posed by sex offenders, make
classifications thereof, and implement three levels of public
notification.  G. L. c. 6, § 178C.  See Doe, Sex Offender Registry Bd. No. 339940
v. Sex Offender Registry Bd., 488 Mass. 15, 17-18 (2021) (Doe. No. 339940).
      First, the board makes an initial
recommendation regarding "each sex offender's duty to register and
classification level," pursuant to G. L. c. 6, § 178L.  803 Code Mass. Regs. § 1.04(2)
(2016).  The board uses a numbered list
of nonexhaustive factors to place offenders according to a three-tiered
system:  level one offenders pose a low
risk of reoffense and degree of dangerousness "such that a public safety
interest is [not] served by public availability" of registration
information; level two offenders pose a moderate risk and degree "such
that a public safety interest is served by public availability of registration
information"; and level three offenders pose a high risk of reoffense and
degree of dangerousness, "such that a substantial public safety interest
is served by active dissemination." 
G. L. c. 6, § 178K (2) (a)–(c). 
See 803 Code Mass. Regs. §§ 1.03, 1.33 (2016).  See also G. L. c. 6, § 178C; Doe, Sex
Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643,
650 (2019) (Doe No. 496501).  
      If an offender wishes to challenge the
initial classification by SORB, he or she is entitled to a de novo hearing
before a hearing examiner.  See G. L. c.
6, § 178L (1) (a); 803 Code Mass. Regs. § 1.04(3)
(2016).  The resulting "final
classification" is then subject to judicial review in the Superior Court
pursuant to G. L. c. 30A.  G.
L. c. 6, § 178M.
      2. 
Doe's sex offenses.  We recite the
relevant facts drawn from the hearing examiner's findings and reserve some for
later discussion. 
      Doe was eighteen years old at the time he
committed sexual offenses against two younger girls.  Prior to these offenses, Doe had received
several psychological diagnoses, including autism spectrum disorder.  Beginning in August 2018, Doe offended
against his ex-girlfriend's best friend (victim one, then thirteen years old)
several times, including raping her.  
      In September 2019, amid the police investigation
into the allegations brought by victim one, police interviewed Doe's
ex-girlfriend (victim two), who stated that she dated Doe the prior year, when
she was fourteen and he was eighteen. 
Victim two reported that Doe raped her "three to four times"
-- including at least once when she told Doe "no," but he pulled her
pants down and raped her. 
      3. 
Procedural history.  Doe was
subsequently indicted in the Superior Court on charges arising from his conduct
against each victim.  On July 1, 2021,
Doe pleaded guilty to four counts of rape and abuse of a child in violation of
G. L. c. 265, § 23, and one count of indecent assault and battery on
a child under fourteen in violation of G. L. c. 265, § 13B.[2]   Doe was sentenced to two and one-half years
in a house of correction, with two years suspended, and four years of probation
to end in November 2025.  
      On September 10, 2021, the board initially
classified Doe as a level three offender and notified Doe of his obligation to
register as such.  Doe challenged the
classification, and a de novo reclassification hearing before a hearing
examiner was held on February 16, 2022. 
The hearing examiner found by clear and convincing evidence that Doe
"present[ed] a moderate risk to re-offend and a moderate degree of danger
such that a public safety interest is served by public access to his sex
offender registry information."  See
G. L. c. 6, § 178K (2) (b). 
Doe was thus reclassified as a level two offender.
      In making his determination on Doe's moderate
risk of reoffense, the hearing examiner applied one statutory high-risk factor
(factor three, adult offender with child victim), three regulatory
risk-elevating factors (factor seven, relationship between the offender and
victim; factor sixteen, public place; and factor twenty-two, number of
victims), and one additional factor (factor thirty-five, psychological or
psychiatric profiles regarding risk to reoffend).  See 803 Code Mass. Regs. § 1.33.  The hearing examiner also found that Doe's
risk of reoffense was mitigated by four risk-mitigating factors -- factor
twenty-eight, supervision by probation or parole; factor thirty-two, sex
offender treatment; factor thirty-three, home situation and support systems;
and factor thirty-four, materials submitted by the sex offender regarding
stability in the community, the last of which he gave minimal weight.  See id.
      In assessing Doe's degree of
dangerousness, the hearing examiner applied one statutory high-risk factor
(factor three, adult offender with child victim), three risk-elevating factors
(factor sixteen, public place; factor nineteen, level of physical contact; and
factor twenty-two, number of victims), and one additional factor (factor
thirty-seven, other useful information). 
See id.  Specifically regarding
factor thirty-seven, the hearing examiner stated that Doe "engaged in
sexual misconduct multiple times between April 2018 and February 2019,"
including raping one of the victims multiple times, and that the examiner
"consider[ed] this information in [his] analysis of the degree of danger
[Doe] poses."  Regarding factor
sixteen, the hearing examiner wrote that he applied it because Doe "had no
expectation of privacy" during several of Doe's offenses, which occurred
"in the woods by a school" and "outside of a school on the
ground."  The hearing examiner
balanced these factors against one risk-mitigating factor (factor twenty-eight,
supervision by probation or parole).  See
id.  
      Finally, the hearing examiner determined
that a public safety interest would be served by Internet publication of Doe's
registration information.  He reasoned
that the availability of such information would specifically help protect
teenage girls, the most likely victims of any reoffense by Doe.  
      As a result of these three requisite
findings, the hearing examiner ordered that Doe register as a level two sex
offender.  Doe sought judicial review of
the classification pursuant to G. L. c. 30A, § 14.  After a hearing, the Superior Court judge
denied Doe's motion for judgment on the pleadings, affirming the hearing
examiner's classification.  Doe timely
appealed, and we transferred this case sua sponte from the Appeals Court.
      Discussion.  In reviewing SORB classification
determinations, a court "may set aside or modify the board's
classification decision where it determines that the decision is in excess of
the board's statutory authority . . . , is based on an error of law, is
not supported by substantial evidence, or is an arbitrary and capricious abuse
of discretion."[3]  Doe, Sex
Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490 Mass. 759, 762
(2022) (Doe No. 6729).  See G. L. c. 30A,
§ 14 (7).  In our analysis, we
"give due weight to the experience, technical competence, and specialized
knowledge of the agency."  Doe No.
6729, supra at 762-763, quoting Doe No. 339940, 488 Mass. at 30.
      Doe contends that the hearing examiner's
decision was arbitrary, capricious, and an abuse of discretion.  His central argument is that, in determining
Doe's degree of dangerousness, the hearing examiner erroneously, and
unconstitutionally, considered Doe's multiple offenses pursuant to the
catch-all factor thirty-seven in a manner precluded by the law governing factor
two, which concerns consideration of the impact of multiple offenses on risk of
reoffense.  See Doe No. 6729, 490 Mass.
at 765-766, citing Doe, Sex Offender Registry Bd. No. 22188 vs. Sex Offender
Registry Bd., Mass. Super. Ct., No. 2081CV1130B (Middlesex County Apr. 16,
2021) (Doe No. 22188 or factor two litigation). 
He further contends that the lack of empirical evidence supporting a
connection between the number of offenses and dangerousness renders the
application of factor thirty-seven unconstitutional.  Doe also asserts that the hearing examiner
gave too much weight to some factors, and not enough to others, in making his
determination of Doe's dangerousness. 
Finally, Doe argues that Internet dissemination should not be mandated
in his case.  We address each argument in
turn. 
      1. 
Distinct inquiries of factors two and thirty-seven.  Factor thirty-seven of the board's
regulations dictates that "[p]ursuant to [G. L. c. 6, § 178L
(1),] the [b]oard shall consider any information that it deems useful in
determining risk of reoffense and degree of dangerousness posed by any
offender."  803 Code Mass. Regs.
§ 1.33.  The hearing examiner cited
Doe's multiple offenses under factor thirty-seven as supporting his conclusion
that Doe's degree of dangerousness was moderate.
      Doe now argues that such consideration was
impermissible, given that previous decisions regarding the proper consideration
of multiple offenses under factor two (repetitive and compulsive behavior)
resulted in certain applications of that factor being deemed unconstitutional.  See Doe No. 6729, 490 Mass. at 765-766; Doe
No. 22188, Mass. Super. Ct., No. 2081CV1130B, supra.  According to Doe, the hearing examiner's
consideration of multiple offenses under factor thirty-seven was simply an end
run around these limits on the use of factor two.
      Doe's reliance on the factor two analysis
is misplaced. Factor two specifically requires not only repetitive but also
compulsive behavior.  Such repetitive and
compulsive behavior is central to the inquiry of risk of reoffense -- the only
inquiry addressed by factor two -- as it has been empirically linked to the
risk of reoffense, while repetitive behavior alone has not been so found.  See Doe No. 6729, 490 Mass. at 766
("[i]f a person offends, gets caught[,] and then goes on to reoffend
again," his or her conduct may be found to be not only repetitive but also
compulsive).  In contrast, factor
thirty-seven does not require proof of compulsive behavior.  And, as utilized here, the hearing examiner's
application of factor thirty-seven was only for determining degree of
dangerousness, not risk of reoffense. 
The statute renders these distinct inquiries:  dangerousness is "measured by the
severity and extent of harm" should an offender recidivate; the risk of
reoffense measures the likelihood an offender will recidivate.  Doe No. 496501, 482 Mass. at 651, 659.  See 803 Code Mass. Regs. § 1.20(2) (2016)
(hearing examiner must make separate determinations on risk of reoffense,
dangerousness, and publication). 
Accordingly, the law restricting application of factor two does not
control this case.
      Indeed, in considering the impact of Doe's
multiple offenses on his future dangerousness -- including that he raped one
victim multiple times -- the hearing examiner was not ignoring the law, but
rather complying with SORB's statutory mandate. 
General Laws c. 6, § 178K, the board's authorizing statute,
requires that the board's classification guidelines include consideration of
"the number, date and nature of prior offenses" "in determining
. . . degree of dangerousness" (emphasis added).  G. L. c. 6, § 178K (b) (iii).  And here, factor twenty-two, accounting for
the number of Doe's victims -- two -- does not fully capture the extent of his
offenses, because he repeatedly offended against one of the victims.  An analysis of dangerousness "naturally
takes place on a continuum," and based on this record, we discern no error
in the hearing examiner considering Doe's multiple prior offenses in his
determination of dangerousness.  Doe No.
496501, 482 Mass. at 651, 659 ("Pragmatically, because past is prologue, a
hearing examiner would make this [dangerousness] determination based on the
sexual crime or crimes that the offender committed in the past").  See G. L. c. 6, § 178L
(1) (board classification entails review of "any information useful in
assessing . . . the degree of dangerousness posed to the public by the sex
offender").  
      2. 
Empirical support for factor thirty-seven.  Doe also asserts that the lack of empirical
data establishing a connection between multiple offenses and degree of
dangerousness is sufficient to invalidate the board's use of such on
constitutional grounds.  In essence, Doe
asks us to conclude that because there has been no demonstrated empirical
connection between repetitive behavior and risk of reoffense there has likewise
been no demonstrated empirical connection between multiple offenses and
dangerousness. 
      We decline to take that analytical leap
when the issue of empirical support for a link between multiple offenses and
degree of dangerousness has not been adequately raised or litigated in the
instant case, and the number of offenses is an express required consideration
to determine dangerousness according to the act.  In the factor two litigation, the parties had
the opportunity to consider and contest the evidence submitted, after which the
Superior Court judge made factual findings regarding the relevant science and
rendered a well-supported decision on the basis of the board's application of
factor two.  See Doe No. 22188, Mass.
Super. Ct., No. 2081CV1130B.  None of
that occurred here.[4]  Instead, Doe did
not raise the issue until his reply brief in this court, and the empirical
evidence on which he relies is only found in an addendum to an amicus brief.[5]  See Assessors of Boston v. Ogden Suffolk
Downs, Inc., 398 Mass. 604, 608 n.3 (1986) ("[a]ny issue raised for the
first time in an appellant's reply brief comes too late").  On the record before us, we therefore decline
to consider the argument whether the current state of empirical evidence
renders unconstitutional the board's use of multiple offenses in its degree of
dangerousness determinations, as required by the act.  See G. L. c. 6, § 178K (b) (iii).
      3. 
Weight of classification factors. 
Doe also argues that several other errors in the hearing examiner's
classification decision, singly or cumulatively, require relief.  The first is that, according to Doe, the
hearing examiner erred in applying risk-elevating factor sixteen (public place)
in the analysis of risk of reoffense and dangerousness.[6]  The hearing examiner found that the locations
of Doe's assaults did not confer an "expectation of privacy" and that
he did not make a "clear and concerted effort" to hide his behavior;
accordingly the hearing examiner did not apply "less weight" to this
factor.  803 Code Mass. Regs.
§ 1.33(16)(a).  The conduct in
question occurred in a wooded area and in an alley, both near a school.  Although, as Doe argues, the school may not
have been in use at the time of the offenses, the locations were nevertheless
sufficiently public to support the hearing examiner's findings and application
of factor sixteen.  See Doe, Sex Offender
Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633
(2011).  
      Doe next proposes that the hearing
examiner should have afforded greater mitigating weight to factors thirty-three
(home situation and support systems) and thirty-four (stability in the
community).  As reflected in his
decision, the hearing examiner considered both factors in mitigation, expressly
recognizing Doe's supportive home environment, and exercised his
"discretion to determine how much weight to ascribe to each factor under
consideration."  Doe No. 6729, 490
Mass. at 768, quoting Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender
Registry Bd., 483 Mass. 131, 138-139 (2019) (Doe No. 23656).  We discern no error in the hearing examiner's
application of those factors, including his conclusion that Doe's limited
involvement with the community was to be given minimal weight; that Doe would
prefer him to have weighed the factors differently does not amount to an abuse
of discretion.
      Doe does, however, correctly identify one
potential flaw in the hearing examiner's decision.  In the portion of the decision explaining the
hearing examiner's application of the various regulatory factors, the first
heading is "High Risk Factor." 
This heading is followed by the subheading "Factor 3 -- Adult
Offender with Child Victim"; factor three is indeed a factor the
Legislature has identified as "indicative of a high risk of reoffense and
degree of dangerousness posed to the public."  G. L. c. 6, § 178K
(1) (a) (iii).  That discussion
is immediately followed by a subheading for and discussion of factor thirty-seven,
which, conversely, is not a statutory high-risk factor.
      There are reasons to be skeptical that
this placement signifies that the hearing examiner gave improper weight to
factor thirty-seven.  The section heading
of "High Risk Factor" is in the singular, which aligns with only
factor three being considered as a high-risk factor.  Moreover, the factor three discussion
explicitly identifies that factor as high risk, while the factor thirty-seven
discussion does not.  Nevertheless, we
need not decide the question of error, because we conclude that even if we were
to excise any improper weight afforded to factor thirty-seven, the record still
"clearly dictate[s]" the conclusion that Doe poses a moderate degree
of dangerousness.  Doe No. 496501, 482
Mass. at 657 n.4.  See Doe No. 6729, 490
Mass. at 767.  As an adult, Doe committed
multiple contact sexual offenses (including rape) against two girls who were
thirteen and fourteen years old, some in public places, and offended repeatedly
against one of the victims.  The only
applicable mitigating factor regarding dangerousness is his probationary
status.  On these facts, we see no need
to remand for clarification of the weighting of factor thirty-seven.  See Doe No. 6729, supra at 769.
      4. 
Internet dissemination.  Doe
lastly contends that Internet dissemination of his information should not be
required.  Internet dissemination is
required for offenders presenting at least a moderate risk of reoffense and
degree of dangerousness where the "public availability of [their]
registration information" would serve "a public safety
interest," as supported by clear and convincing evidence.  Doe No. 496501, 482 Mass. at 646, 654,
quoting G. L. c. 6, § 178K (2) (b).  The board must look to "the particular
risks posed by the particular offender" to assess whether Internet
dissemination "might realistically serve to protect the public against the
risk of the offender's sexual reoffense." 
Doe No. 496501, supra at 655. 
      We discern no error in the hearing examiner's
findings regarding Internet dissemination. 
His subsidiary findings -- that should Doe reoffend, it would likely be
against "a vulnerable teenaged girl," and that Internet publication
would serve to protect these "teenaged girls . . . from becoming [v]ictims
of sex offenses" committed by Doe in the future -- were supported by the
record.  Those findings, in turn, support
his ultimate determination that a public safety interest would be served by
publication.  See Doe No. 496501, 482
Mass. at 645, quoting St. 1999, c. 74, emergency preamble (purpose of sex
offender registration law is to "protect . . . vulnerable
members of our communities from sexual offenders").  Doe's reliance on his expert's testimony that
Internet publication is unnecessary is unavailing:  while the hearing examiner is permitted to
weigh expert testimony, the board is not bound by such testimony.  See Doe No. 23656, 483 Mass. at 137
("Doe is not entitled to a guarantee that SORB will reach the same
conclusion as his expert; he is entitled only to careful consideration of his
expert's testimony").
      Conclusion.  For the foregoing reasons, we conclude that
the hearing examiner's classification decision was supported by substantial
evidence and not arbitrary or capricious. 
Therefore, the judgment affirming the board's decision to classify Doe
as a level two sex offender is affirmed.
So ordered.

footnotes

[1] We
acknowledge the amicus brief submitted by the Committee for Public Counsel
Services.

[2] Doe was also
indicted on one count of forcible rape and abuse of a child in violation of G.
L. c. 265, § 22A, and two additional counts of rape and abuse of a child in
violation of G. L. c. 265, § 23.  In
exchange for the plea, the Commonwealth entered a nolle prosequi as to these
additional counts.

[3]
"Substantial evidence is 'such evidence as a reasonable mind might accept
as adequate to support a conclusion.'" 
Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd.,
486 Mass. 749, 757 (2021), quoting G. L. c. 30A, § 1 (6).

[4] Nor did Doe
raise the issue before the hearing examiner, a requirement for certain species
of constitutional challenges.  See Doe
No. 339940, 488 Mass. at 20 (agency not authorized to decide constitutionality
of its statutes and regulations, but where "a constitutional issue is
closely intertwined with the facts of a specific case," party should
"raise constitutional question in the agency proceeding" so agency
can "make factual findings necessary to address the constitutional
question").  See also Doe, Sex
Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603,
629-631 (2011).  

[5] Among the
evidence in question is a letter from Dr. Karl Hanson, "a scholar in this
field on whose work the board has heavily relied when crafting its
regulations."  Doe No. 6729, 490
Mass. at 765.  In his letter, Hanson
states that he "know[s] of no studies that have directly examined the
extent to which the number of index offences is related to the severity and
extent of harm of future offences." 
Crucially, there has not been an evidentiary hearing here, with an
opportunity for cross-examination to test any such statements or other
evidence. 

[6] Factor
sixteen (public place) states:  "The
commission of a sex offense or engaging in sexual misconduct in a place where
detection is likely reflects the offender's lack of impulse control.  The [b]oard may apply less weight to factor
[sixteen] if there is evidence that the offender made a clear and concerted
effort to conceal his offending behavior from others.  For purposes of factor [sixteen] a public
place includes any area maintained for or used by the public and any place that
is open to the scrutiny of others or where there is no expectation of privacy"
(quotation omitted).  803 Code Mass.
Regs. § 1.33(16).