NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-369                                           Appeals Court

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 524553
vs.  SEX OFFENDER REGISTRY BOARD.

No. 19-P-369.

Essex.     July 15, 2020. - September 29, 2020.

Present:  Blake, Sacks, & Ditkoff, JJ.

Sex Offender.  Sex Offender Registration and Community
    Notification Act.  Evidence, Sex offender, Expert opinion.
    Practice, Civil, Sex offender.

Civil action commenced in the Superior Court Department on
October 25, 2017.

The case was heard by James F. Lang, J., on a motion for
judgment on the pleadings.

Kate A. Frame for the plaintiff.
Rachael A. Michaud for the defendant.

SACKS, J.  The plaintiff, John Doe, appeals from a Superior

Court judgment affirming, on judicial review under G. L. c. 6,

§ 178M, and G. L. c. 30A, § 14, a final decision of the Sex

Offender Registry Board (board) classifying Doe as a level two

sex offender.  Doe argues that the board's hearing examiner

(examiner) erred or abused his discretion (1) in declining to consider whether public dissemination of Doe's information will serve a public safety interest, (2) in excluding a transcript of assertedly relevant expert testimony from another case, and (3) in failing to give appropriate weight to various regulatory factors.  We conclude that a remand to the board is necessary, in order to allow the examiner to reconsider the public dissemination issue in light of Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643 (2019) (Doe No. 496501), to consider the expert testimony, and to reconsider certain regulatory factors.

Background.  In 2017, Doe pleaded guilty to four counts of indecent assault and battery on a child.  The victims were Doe's two stepdaughters; the offenses occurred in 2011 or 2012, when the victims were between the ages of eleven and thirteen.  Three of the offenses occurred on the steps by the back door of their family home; the other offense occurred in Doe's bedroom.

Victim 1 reported that on one occasion Doe, while intoxicated, had touched her vagina over her clothes.  On a second occasion they were watching television on his bed and, after he caused her to put her hand on his erect penis, he inserted his fingers into her vagina.  Victim 2 reported that, on the same day of the first offense against Victim 1, Doe, intoxicated, twice touched her breasts over her clothes.

In his final decision, the examiner applied two "[h]igh [r]isk" factors to Doe:  factor 2 (repetitive and compulsive behavior) and factor 3 (adult offender with child victim).  See 803 Code Mass. Regs. § 1.33(2), (3) (2016).  He also found that the following factors elevated Doe's risk:  factor 9 (alcohol and substance abuse), factor 10 (contact with criminal justice system), factor 16 (commission of offense in public place), factor 19 (level of physical contact), and factor 22 (number of victims).[1]  See 803 Code Mass. Regs. § 1.33(9), (10), (16), (19), (22) (2016).  The examiner assigned varying degrees of risk-mitigating weight to factor 28 (supervision on probation or parole), factor 33 (home situation and support systems), and factor 34 (stability in the community), but gave no weight to factor 32 (sex offender treatment) and essentially no weight to factor 37 (other useful information -- here, scholarly articles submitted by Doe regarding recidivism).  See 803 Code Mass. Regs. § 1.33(28), (32), (33), (34), (37) (2016).  He ultimately determined that Doe presented a moderate risk of reoffense and a moderate degree of dangerousness.  The examiner declined to assess the efficacy of Internet dissemination, stating that he

---

[1] The examiner also gave "minimal aggravating weight" to factor 11 (violence unrelated to sexual assaults) and factor 15 (hostility toward women).  See 803 Code Mass. Regs. § 1.33(11), (15) (2016).

did "not have the statutory authority to make dissemination determinations."[2]

Discussion.  "[T]o find that an offender warrants a level two classification, the board must find by clear and convincing evidence that (1) the offender's risk of reoffense is moderate; (2) the offender's dangerousness is moderate; and (3) a public safety interest is served by Internet publication of the offender's registry information."  Doe No. 496501, 482 Mass. at 656.  Our review is limited, and "[w]e reverse or modify the board's decision only if we determine that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law."[3]  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011).

---

[2] The examiner, in so ruling in 2017, did not have the benefit of the court's 2019 decision in Doe No. 496501, 482 Mass. at 650 (board must determine whether Internet access to offender's information might realistically serve to protect public against risk of offender committing new sexual offense). Nor did the Superior Court judge, at the time he upheld the examiner's decision.

[3] Also, an appellate court reviewing a Superior Court's ruling under G. L. c. 30A, § 14 (7), "is conducting an analysis of the same agency record, and there is no reason why the view of the Superior Court should be given any special weight.  Both in the Superior Court and in [the appellate] court the scope of review is defined by . . . § 14" (citation omitted). Southern Worcester County Regional Vocational Sch. Dist. v. Labor Relations Comm'n, 377 Mass. 897, 903 (1979).  See Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 108 n.3 (2014).

1. Active dissemination. First, Doe argues that the examiner failed to separately evaluate and explicitly determine by clear and convincing evidence, as required by Doe No. 496501, 482 Mass. at 656-657, "whether and to what degree public access to the offender's personal and sex offender information . . . is in the interest of public safety." 803 Code Mass. Regs. § 1.20(2)(c). For classification matters (such as this one) where no such determination was made, and that were pending before an appellate court when Doe No. 496501 was released, a remand may not be necessary if the board's "existing findings are sufficiently explicit to enable proper review," or when "the underlying facts of the case . . . so clearly dictate the appropriate classification level." Doe No. 496501, supra at 657 n.4.

Here, the examiner did not make explicit findings regarding the need for Internet dissemination, or consider that issue in his analysis of the regulatory factors, stating instead that he did "not have the statutory authority to make dissemination determinations." This leaves unanswered the question "whether, in light of the particular risks posed by the particular offender, Internet access to that offender's information might realistically serve to protect the public against the risk of the offender's sexual reoffense." Doe No. 496501, 482 Mass. at 655. "If the answer to this question is 'no,' classification as

a level two offender is unjustified even where the offender poses a moderate risk to reoffend and a moderate degree of dangerousness."[4]  Id.

"Determining an individual's degree of dangerousness . . . requires a hearing examiner to consider what type of sexual crime the offender would likely commit if he or she were to reoffend.  Pragmatically, because past is prologue, a hearing examiner would make this determination based on the sexual crime or crimes that the offender committed in the past."  Doe No. 496501, 482 Mass. at 651.  See Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 144-146 (2019) (focusing on characteristics of offender's past sex offenses in determining degree of dangerousness and efficacy of Internet dissemination).

In this case, Doe's sex offenses were against intrafamilial victims.  The board agreed at oral argument that the record does not suggest that Doe (who has a supportive spouse to whom he has been married since 2009 and with whom he has two sons) is likely

---

[4] To be sure, the court has stated that "[w]here a sexually violent offender presents a moderate risk to reoffend and a moderate degree of dangerousness, Internet publication will almost invariably serve a public safety interest by notifying potential victims of the risks presented by the offender in their geographic area."  Doe No. 496501, 482 Mass. at 655.  But the court has also recognized that "[t]he efficacy of Internet publication in protecting potential victims must be determined based on the facts of each individual case."  Id.

to enter into additional familial relationships for the purpose of gaining access to additional intrafamilial victims -- a scenario that might tend to support Internet dissemination in order to warn such other families about Doe.  Also, while we need not go so far as to accept Doe's claim that he offended only "within the confines of his home," neither does the record support the examiner's finding that three of the offenses occurred "in an area open to public scrutiny" -- a scenario that might tend to support Internet dissemination in order to warn the general public.[5]

Thus this is not a case in which "the underlying facts . . . clearly dictate" whether Internet dissemination is warranted and thus make a remand unnecessary.  Doe No. 496501, 482 Mass. at 657 n.4.  Instead, we remand to the examiner to consider explicitly whether clear and convincing evidence proves that, to the extent Doe is likely to reoffend, a reoffense in the nature of his previous offenses could be prevented, or its

---

[5] The examiner found that three of Doe's offenses occurred "outside the home by a set of steps in an area open to public scrutiny."  The most direct record evidence about the offenses is a police report stating that, according to both victims, these offenses occurred "outside on the back steps" or "on the steps by the back door."  Nothing in the record indicates whether the area was open to public scrutiny.  Whether a reopened or new hearing is warranted on this or other issues is for the board to determine in the first instance on remand.  See Doe No. 496501, 482 Mass. at 658.

risk substantially reduced, by Internet dissemination of Doe's sex offender registry information.

2. Expert testimony. Doe argues that the examiner erred by excluding a transcript of the testimony of Dr. R. Karl Hanson from a previous, unrelated board hearing. We agree. The same hearing transcript was at issue in Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 96 Mass. App. Ct. 738, 743-744 (2019) (Doe No. 22188). "In that hearing, Hanson testified that [the board] misunderstood and misapplied his research, and that of other researchers, in formulating its regulations regarding repetitive and compulsive behavior." Id. at 743. Here, as in Doe No. 22188, the transcript is "directly relevant to the hearing examiner's assessment of the weight to be given factor 2 [repetitive and compulsive behavior], because Hanson's testimony addressed whether there is predictive value in considering multiple offenses when the sexual offender has not been confronted, apprehended, or charged before the subsequent offense occurs." Id. "While we express no opinion as to the weight, if any, to be given to this testimony, the evidence should have been admitted and considered by the hearing examiner," and a remand is therefore necessary.[6] Id. at 744.

_____

[6] At oral argument the board asserted that, despite differences in terminology, the examiner had already given factor 2 the degree of weight that Dr. Hanson's views, if accepted, would suggest is appropriate, and that would be

3.  Regulatory factors.  Doe argues that the examiner abused his discretion in determining the weight to give certain regulatory factors.  We address most of these contentions relatively briefly, before turning to one that requires more extended discussion, concerning certain scholarly articles submitted by Doe.  We keep in mind that "[a] hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor."  Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014).  "Accordingly, [o]ur review does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion as [the board], but only whether a contrary conclusion is not merely a possible but a necessary inference" (quotations and citation omitted).  Id. at 110.

First, Doe challenges the examiner's treatment of factor 10 (contact with criminal justice system).  Doe claims that the examiner erred in applying this aggravating factor because Doe had not incurred any convictions in the twenty years preceding his 2017 convictions for the offenses against his stepdaughters.

appropriate under Doe No. 22188.  But, in view of the numerous gradations of aggravating weight that the examiner's decision here assigned to various factors -- ranging from "minimal aggravating" to "aggravating" to "increased aggravating" to "full aggravating," the examiner's treatment of factor 2 requires reconsideration and clarification.

But factor 10 is not limited to convictions, see 803 Code Mass. Regs. § 1.33(10), and the examiner, in applying this factor, permissibly considered that numerous charges against Doe "were disposed of via fines, [continuance without a finding], dismissals, probation and commitments."

Second, Doe challenges the examiner's refusal to give any mitigating weight to factor 32 (sex offender treatment). We see no error. Doe had the burden "to provide documentation from a treatment provider verifying his treatment participation or completion." 803 Code Mass. Regs. § 1.33(32). This documentation must include, among other things, "a record of the offender's attendance, level of participation, and degree of progress." Id. Here, as the examiner ruled, Doe failed to provide the required information.

Third, Doe argues that the examiner abused his discretion in giving only moderate weight to factor 33 (home situation and support systems). Doe claims he should have received full mitigating weight because he was "residing in a positive and supportive environment," and his support network, specifically his wife, was "aware of [his] sex offense history and provid[ing] guidance, supervision, and support of rehabilitation." 803 Code Mass. Regs. § 1.33(33)(a). But Doe's wife testified at the board hearing that she does not know the details of the sex offenses beyond "inappropriate touching";

that she is "not super good at talking about these things"; and that, in conversations with her, Doe has taken responsibility "[t]o a certain degree but not a deep discussion about it, per [her] wishes." The examiner could reasonably conclude that these circumstances make it difficult for her to give "guidance" or "supervision" regarding Doe's rehabilitation, and thus that factor 33 should receive only moderate mitigating weight. Id.

Fourth, Doe argues that the examiner gave insufficient weight to factor 34 (materials submitted by offender regarding stability in the community). 803 Code Mass. Regs. § 1.33(34)(a). Factor 34 requires the examiner to "consider evidence that directly addresses the offender's recent behavior and lifestyle including . . . sustained sobriety, education or employment stability . . . ." Id. Doe's argument also implicates factor 9 (alcohol and substance abuse), which provides in part that "[a]n offender's history of drug and alcohol use and history of treatment, abstinence and relapse should be considered in determining the weight given to factor 9." 803 Code Mass. Regs. § 1.33(9)(a). Doe and his wife both testified at the hearing that, although he had previously had a drinking problem, he had not had a drink since 2013, when the allegations by one of his stepdaughters had come to light within the family. That had resulted in his obtaining several months of inpatient treatment, attending Alcoholics Anonymous (AA)

meetings, and "graduat[ing] the 12 [s]teps." Doe testified that he no longer attended AA meetings because his work schedule required him to wake up at 4 A.M.

Although the examiner was not required to credit this testimony, he was required at least to address it under factors 9 and 34. He did not do so. Instead, under factor 9 (alcohol and substance abuse), the examiner acknowledged (without indicating whether he credited) the testimony and then stated, "Given [that] alcohol played a role in the offending behavior, he has a history of alcohol abuse and that he is currently not in treatment, I give this factor full aggravating weight." The examiner did not mention the testimony in discussing factor 34. On remand, the examiner should expressly address how he considered the evidence of Doe's "history of treatment [and] abstinence . . . in determining the weight given to factor 9," 803 Code Mass. Regs. § 1.33(9)(a), and how he considered the evidence of Doe's "recent . . . sustained sobriety," 803 Code Mass. Regs. § 1.33(34)(a), in determining the weight to be given factor 34.[7] We, of course, do not require that either factor be given any particular weight.

---

[7] The examiner's discussion of factor 34 was limited to the statement that Doe "testified that he is employed full-time delivering lumber. I consider this mitigating factor."

Doe's last argument is that the examiner erred in giving little weight to certain scholarly articles that Doe submitted under factor 37. See 803 Code Mass. Regs. § 1.33(37)(a) ("Board shall consider any information that it deems useful in determining risk of reoffense and degree of dangerousness"). Doe relied on statements in the articles such as, "[c]hild molesters who only target intrafamilial victims (incest offenders) have consistently lower recidivism risk than other sexual offenders," and "[t]he recidivism rate of intrafamilial child molesters was generally low (less than 10%)," with an exception not relevant here. R.K. Hanson, Age and Sexual Recidivism: A Comparison of Rapists and Child Molesters, at iii, 2 (2001).[8] Doe argues that factor 7 (relationship between offender and victim), 803 Code Mass. Regs. § 1.33(7) (2016), does not adequately address the research on incest offenders, and is internally contradictory, requiring that the submitted articles be given greater weight. Doe's essential argument

_____

[8] Dr. Hanson, the author of several of the articles Doe submitted, also wrote a number of articles cited in the board's classification regulations and is considered an "authority" within the meaning of those regulations. See Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 603-604 (2013) (Doe No. 205614). The examiner inaccurately described the articles as concerning only age and recidivism, whereas they also refer to how recidivism rates vary according to the relationship between the offender and the victim. For the reason discussed infra, this mistaken reference did not prejudice Doe.

appears to be that the fact that he offended against only intrafamilial victims should have been considered a risk-mitigating factor.

To evaluate this argument, we must first briefly review the most relevant provisions of factor 7 as it applies to adult males such as Doe. Factor 7 recognizes and defines in detail three categories of relationships between an offender and a victim: "[i]ntrafamilial [v]ictim," "[e]xtrafamilial [v]ictim" (known to the offender but not in an intrafamilial relationship), and "[s]tranger [v]ictim" (unknown to the offender, or known for less than twenty-four hours before the offense). 803 Code Mass. Regs. § 1.33(7)(a). Factor 7 explains the significance of these categories as follows:

> "Offenders who only target intrafamilial victims may be at a lower risk to reoffend as compared to offenders who target unrelated victims. However, having an intrafamilial victim is not a risk mitigating, nor a risk elevating, factor. It is included for definitional purposes only.

> . . .

> "Having victims outside the family relationship is empirically related to an increased risk of reoffense. The number of potential victims substantially increases when offenders choose to sexually offend against extrafamilial victims.

> . . .

> "Sex offenders who have sexually offended against a stranger victim have a higher risk of reoffense th[a]n offenders who target victims known to them."

Id.

Generally speaking, then, factor 7 treats offenders against only intrafamilial victims as presenting what might be termed a baseline level of risk of reoffense.  Offenders against extrafamilial victims are treated as presenting an "increased risk," and offenders against stranger victims are treated as presenting an even "higher risk."  What factor 7 does <u>not</u> do is recognize some baseline level of risk of reoffense that is greater than the risk presented by offenders against intrafamilial victims, and then treat offending against only intrafamilial victims as a risk-mitigating factor.[9]  "[H]aving an intrafamilial victim is not a risk mitigating, nor a risk elevating, factor."  803 Code Mass. Regs. § 1.33(7)(a)(1).

Doe challenges this aspect of factor 7.  He asserts that, in light of its recognition that offenders who target only intrafamilial victims may be at relatively lower risk to reoffend, it is "clearly contradictory" for factor 7 not to give risk-mitigating weight in classifying offenders who have

---

[9] We use the term "baseline" for explanatory purposes only. We do not purport to determine whether the board's regulations actually presume any baseline level of risk of reoffense for offenders generally.  The regulations do not use the term "baseline."  See generally 803 Code Mass. Regs. § 1.33 (2016).

targeted only such victims.  He contends that the articles he submitted should have been considered on this issue.[10]

The flaw in Doe's argument is that he points to nothing in the articles actually addressing this issue -- i.e., nothing explaining how the circumstance of having offended against only intrafamilial victims should be weighed within a system (such as the board's) for classifying sex offenders' risk of reoffense and degree of dangerousness.  The articles state generally that such offenders have a lower risk of reoffense relative to other offenders.  Factor 7 reflects that view by assigning risk-elevating weight when offenders target extrafamilial or stranger victims.  But Doe identifies nothing in the articles suggesting that all offenders should initially be viewed as presenting a level of risk that should then be adjusted downward in cases of offenders who target only intrafamilial victims and upward to varying degrees in other cases.  Because the articles shed no

---

[10] In a similar vein, Doe argues that the examiner erred in not specifically citing factor 7 and giving it risk-mitigating weight in his case.  Factor 7 expressly states that no such weight shall be given, however, making it effectively inapplicable to Doe's classification, and the examiner's decision stated that inapplicable factors would not be discussed.  See Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 788 (2006).

light on the argument Doe sought to make, the examiner did not err in giving the articles little weight.[11]

Conclusion.  The judgment affirming the board's decision is vacated, and a new judgment shall enter remanding the case to the board for further proceedings consistent with this opinion.

So ordered.

---

[11] We therefore need not discuss the extent to which, had the articles contradicted the regulation, the examiner would have been required to consider them.  See Doe No. 205614, 466 Mass. at 603-609; Doe No. 22188, 96 Mass. App. Ct. at 743-744 & n.8.  See generally Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983) (agency is bound by own regulations); Doe, Sex Offender Registry Bd. No. 58574 v. Sex Offender Registry Bd., 98 Mass. App. Ct. 307, 311 n.7 (2020) (noting cases where examiner was not required to consider expert testimony on issues addressed by board's regulations).