NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-1036

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 523875

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment that affirmed his classification by the Sex Offender Registry Board (SORB or board) as a level three sex offender. Doe contends that the hearing examiner erred in applying certain factors, engaged in a checklist approach which was arbitrary and capricious and was not supported by substantial evidence, and that his liberty and privacy interests outweigh the public's right to his information via publication. We affirm.

Background. We summarize the essential facts as set forth in the hearing examiner's decision, "supplemented by undisputed facts from the record" and reserving some facts for later discussion. Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 606 (2011).

In August 2014, a woman reported that Doe sexually assaulted her in July 2014. The woman (victim one) alleged that, while at a bar, Doe attempted to persuade her to engage in sexual activity in exchange for heroin and crack cocaine. After the woman refused, Doe led her into an alley, lifted her shirt and bra, pulled down her pants, and digitally penetrated her vagina. Doe told her he could "easily slice her throat, rape her and dump her body and no one would know." Doe then put a sharp object against her, forced her to fellate him, and ejaculated in her mouth. At the time of the assault, Doe was on probation and was wearing a global positioning system (GPS) ankle monitor.

Just over a month later, in September 2014, another woman reported a similar assault to the police. She stated that Doe approached her and asked if she wanted to accompany him to "get high" on heroin or cocaine. Doe led her to an alley, pressed a sharp object against her neck, pushed her head down, and forced his penis into her mouth until he ejaculated.

Doe was indicted in Superior Court on charges arising from his attacks on both women. As to the first victim, Doe pleaded guilty to two counts of rape, in violation of G. L. c. 265, § 22, and two counts of indecent assault and battery on a person over fourteen, in violation of G. L. c. 265, § 13H. He was sentenced to six to seven years for the two counts of rape, and

2

three years of probation for the two counts of indecent assault and battery.  As part of the plea deal regarding the first victim, the charges involving the second victim were dismissed.

Subsequently, SORB preliminarily classified Doe as a level three sex offender.  Doe requested a hearing to challenge SORB's classification; after a de novo classification hearing, the hearing examiner found by clear and convincing evidence that Doe presented a high risk to reoffend and a high degree of dangerousness and affirmed the classification.  Doe sought judicial review, and a Superior Court judge affirmed the level three classification.  This appeal followed.

Discussion.  1.  Standard of review.  To support a level three sex offender classification, SORB must prove by clear and convincing evidence:  (1) that the risk of reoffense is high; (2) that the offender's dangerousness, as measured by the severity and extent of harm the offender would present to the public in the event of reoffense, is high; and (3) that a public safety interest is served by Internet publication of the offender's registry information.  Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 644, 657 (2019) ("requirement of explicit findings regarding all three elements applies not only to level two classifications, but also to level three classifications").

"In reviewing SORB's decisions, we 'give due weight to the experience, technical competence, and specialized knowledge of the agency.'" Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 602 (2013), quoting G. L. c. 30A, § 14 (7).  However, we may "set aside or modify SORB's classification decision where . . . the decision is in excess of SORB's statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence."  Doe No. 496501, 482 Mass. at 649.

"[T]he proper standard of review when an offender successfully challenges the application of a regulatory factor is to ask whether the error may have affected the classification and, if so, to remand to SORB."  Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 804 (2022) (Doe No. 22188).  If the underlying facts "clearly dictate the appropriate classification level," then the classification may stand and remand is unnecessary.  Id. at 804, quoting Doe, Sex Offender Registry Bd. No. 356315 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 292, 301 (2021).  If the facts do not clearly dictate the result, then the court must "examine whether the examiner's decision itself relied on the erroneous factor," and if so, remand to SORB.  Id. at 805.

4

2.  Application of risk factors.  The hearing examiner determined that Doe's risk was heightened based on the application of ten risk factors.  In addition to factor 2 (repetitive and compulsive behavior), which the hearing examiner applied as a high risk factor, the examiner also applied nine risk elevating factors.  The examiner also considered and weighed the risk mitigating factors.[1]  Doe argues the examiner erroneously applied factors 2, 9, 10, and 11.[2]  We conclude that factors 9, 10, and 11 were properly applied, and thus were not arbitrarily or capriciously applied.  And while we agree with Doe that factor 2 was misapplied, the underlying facts of the case clearly dictate that the appropriate classification is level three such that remand is not warranted.

---

[1] The examiner gave Doe moderate mitigating weight to factor 28 (supervision by probation or parole), factor 32 (sex offender treatment), and factor 33 (home situation and support systems).

[2] The examiner also found that Doe sexually assaulted stranger victims, applying factor 7 (relationship between the offender and victim); used a weapon during the sex offenses, applying factor 8 (weapons, violence or infliction of bodily injury); used drugs during the commission of the offenses, applying factor 9 (alcohol and substance abuse); possessed drugs and accumulated twelve disciplinary reports while incarcerated, applying factor 12 (behavior while incarcerated or civilly committed); had violated his probation twice in the past, applying factor 13 (noncompliance with community supervision); penetrated the first victim with his fingers and penetrated her mouth with his penis, and penetrated the second victim with his penis, applying factor 19 (level of physical contact); and that he sexually assaulted two victims, applying factor 22 (number of victims).

a. Factor 9. Factor 9 is applicable when (1) the sex offender has a "history of substance abuse," (2) the sex offender "demonstrates active substance abuse," or (3) when the substance abuse "was a contributing factor in the sexual misconduct." 803 Code Mass. Regs. § 1.33(9)(a) (2016). Doe contends that the hearing examiner erred in applying this factor because it does not apply to an offender's use of drugs to lure the victim to a place where a sex offense may occur, that the hearing examiner ignored relevant evidence, such as Doe's participation in substance abuse treatment, and that the hearing examiner made a factual error in finding that Doe was found in possession of an opioid during incarceration.[3] SORB acknowledges that if the offer of heroin and cocaine to lure victims to a situation where he could sexually assault them was the only evidence of drug use, factor 9 would not apply.

Doe concedes that he was under the influence of drugs at the time of the offenses, admitted that he sold and used drugs prior to incarceration, and that he "had no other options but to sell and use drugs to maintain his lifestyle." Doe also admits that he was found in possession of an illegal drug, "K2," while incarcerated. Further, while Doe completed one substance abuse course, there was no evidence that he engaged in prolonged

---

[3] Doe also argues that the hearing examiner utilized a "checklist approach," which we address infra.

6

treatment. While the hearing examiner should have mentioned

Doe's participation in substance abuse treatment, on this

record, the hearing examiner's application of this factor was

not arbitrary or capricious. See Doe, Sex Offender Registry Bd.

No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 759 n.12

(2021) (affirming hearing examiner's finding that petitioner's

substance abuse increased his risk of reoffense and degree of

dangerousness when sexual misconduct was worse when drinking and

where he had lengthy history of "substance-related crime"). We

discern no error with the application of this factor.

b. Factor 10. Doe contends the hearing examiner also

erred in applying factor 10 (contact with criminal justice

system). The hearing examiner noted that between 2007 and 2014

Doe was charged with thirteen offenses,[4] and had two probation

violations.[5] Doe does not contest the accuracy of the

information in the examiner's summary of his criminal history,

merely that the examiner did not make it clear that the

---

[4] The hearing examiner listed all nonsexual charges in the underlying sex offense case as well as charges relating to a 2012 incident that resulted in a 2012 District Court case and 2013 Superior Court case. In total, Doe accumulated the following charges: two charges for threatening, two for assault and battery, three for assault and battery with a dangerous weapon (including, in one case, a firearm), one for armed robbery, one for possession of a loaded firearm, one for possession of ammunition, and one for driving a car without permission.

[5] In addition to the criminal charges that Doe accrued, he also received multiple disciplinary reports while incarcerated.

convictions stemmed from only three cases, and that Doe's record does not reflect a "persistent disregard for rules, laws, and the violations of the rights of others" or "ongoing criminal behavior."

We discern no error in the application of factor 10. Doe has extensive contacts with the criminal justice system and was on probation when he committed his sex offenses. Examiners are required to consider the number and type of criminal charges, the disposition on the charges, and the dates of the criminal conduct, but there is no requirement to list the dates that the events occurred. See 803 Code Mass. Regs. § 1.33(10)(a). Here, the examiner appropriately recounted Doe's criminal record, including the dates and disposition of the charges. Given Doe's substantial contacts with the criminal justice system, and that the summary of the charges was accurate, there was no error in the application of this factor.

c. Factor 11. Doe contends that the hearing examiner erred in applying factor 11 (violence unrelated to sexual assaults). He argues that the hearing examiner improperly included assaultive charges that were part of the index sex offense cases, made no mention of the frequency of nonsexual violence, and that the hearing examiner did not properly address Doe's conviction for armed robbery and related firearm charges.

8

Doe is correct that the examiner improperly included the charges related to the underlying sexual offenses, as factor 11 only applies to violence unrelated to sexual assault. The hearing examiner found that, "Aside from his sexual charges, [Doe] has [nonsexual] charges for violence including threatening, assault and battery, assault and battery with [a] dangerous weapon (including one involving a firearm), armed robbery, and possession of a loaded firearm." The threatening, assault and battery, and one of the assault and battery by means of a dangerous weapon charges were related to the sexual assaults. However, setting aside those charges, Doe was still charged with assault and battery by means of a dangerous weapon, and he was convicted of armed robbery, one count of possession of a firearm, and one count of possession of a loaded firearm, stemming from a 2012 incident. During an altercation, Doe brandished a loaded firearm which, during an ensuing struggle, was discharged, striking the individual in the shoulder. Even though the assault and battery by means of a dangerous weapon charge did not result in a conviction, the hearing examiner was still permitted to consider the facts underlying the charge. See Doe, Sex Offender Registry Bd. No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 79 (2015). The violent

9

conduct, which resulted in multiple convictions,[6] amply supports

the application of factor 11, as it shows Doe's tendency to act

violently and without regard to the safety of others.  We

discern no error in the application of this factor.

d.  Factor 2.  Finally, Doe argues, and the Commonwealth

concedes, that the hearing examiner improperly applied factor 2

(repetitive and compulsive behavior) "because the defendant was

not discovered, confronted, or investigated between the two

rapes, much less charged or convicted."  Doe No. 22188, 101

Mass. App. Ct. at 799.[7]  However, we conclude that the

misapplication of factor 2 would not have affected the

---

[6] The hearing examiner did not rely on Doe's violent conduct
while incarcerated, which included being disciplined for
possession of a gun, firearm, weapon, sharpened instrument, or
knife and fighting with a person in the visitation area during
visitation and engaging in an unauthorized visit while on a work
crew.

[7] The hearing examiner held that, to be separate, there must be
time and opportunity for the offending party to reflect upon the
wrongfulness of his conduct between offenses.  He then applied
the factor to Doe, as there were two sexual assaults months
apart, though there was no intervening arrest or indictment.
However, after the hearing examiner made their decision, a
Middlesex Superior Court judge issued a declaratory judgment
stating that the second and third sentences of factor 2
unlawfully exceeded SORB's authority and violated due process by
attributing a high risk of reoffense without an intervening
indictment or conviction.  Doe, Sex Offender Registry Bd. No.
22188 v. Sex Offender Registry Bd., Middlesex Sup. Ct. No. 20-
1130-B, slip op. at 1, 17-22 (April 16, 2021).  SORB has not
challenged that holding and accepts that SORB is bound by the
declaratory judgment.

10

classification and therefore does not require remand. See Id.
at 804.

"[W]e start by asking whether the underlying facts of the
case . . . clearly dictate the appropriate classification level"
(quotation omitted). Doe No. 22188, 101 Mass. App. Ct. at 804.
In contrast to Doe No. 22188, in which we vacated the
petitioner's classification after concluding that factor 2 did
not apply, we conclude that the facts here do "clearly dictate"
Doe's classification as a level three sex offender. Here, the
underlying sex offenses involved violent rapes, where Doe lured
the victims away with the promise of drugs and then committed
the rapes with threats of violence and the use of a sharp
object.[8] The hearing examiner also found that nine additional
risk elevating factors applied. Contrast id. at 804-805 (where
inapplicability of factor 2 negated many other risk elevating
factors). Furthermore, contrary to the circumstances in Doe No.
22188, where we highlighted the petitioner's "considerable
mitigation," both while incarcerated and in his four years in
the community,[9] there is little evidence of any progress Doe has

---

[8] In addition to the two sexual assaults, Doe has been charged
with nonsexual violence, accumulated twelve infractions while
incarcerated, has a history of substance abuse, and has twice
violated his probation, including by perpetrating the sexual
assault against the first victim.
[9] The petitioner in Doe No. 22188 was an "active participant in
[sex offender] treatment," "expressed remorse" for his offense,
and "obtained a college degree and certificates in welding and

11

made since his offenses.  Id. at 805.  As the hearing examiner noted in the present matter, at the time of hearing Doe had not yet completed sex offender treatment, only had a supporting letter from his mother that did not discuss if she or other family members were aware of the details of Doe's sexual crimes or if other family might support him in not reoffending in the future, and Doe did not have a job ready after leaving incarceration.  Further, Doe here is younger than the offender in Doe No. 22188 and he committed his offenses more recently.[10]

Ultimately, the underlying facts here dictate Doe's high risk of dangerousness and reoffense.  Doe raped two strangers with a weapon while he was wearing a GPS monitor on probation from armed robbery and firearm violations, has substance use issues, and continued his infractions while incarcerated.  Contrast Doe No. 22188, 101 Mass. App. Ct. at 805.  We conclude that even without the application of factor 2, Doe's level three classification is appropriate.

---

commercial driving, regularly attend[ed] religious services, work[ed] full time at a hospital as a pipefitter, [was] married, and own[ed] a home."  101 Mass. App. Ct. at 805.

[10] Doe was thirty-one years old when the hearing examiner issued her decision and had committed the offenses approximately six years prior to the decision, whereas the offender in Doe No. 22188 was fifty-five years old at the time of the classification and committed the original offenses approximately thirty years prior to the decision.  Doe No. 22188, 101 Mass. App. Ct. at 798, 805.

12

3. _Weight of regulatory factors_. Doe is correct when he argues that a hearing examiner cannot show merely the mechanical application of a checklist. Doe, Sex Offender Registry Bd. No. 11204 v. Sex Offender Registry Bd., 97 Mass. App. Ct. 564, 574 (2020). However, we are satisfied that Doe's level three classification was supported by substantial evidence, which is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109 (2014), quoting G. L. c. 30A, § 1 (6). Here, the hearing examiner explained how much weight she ascribed to each applicable aggravating and mitigating factor and provided a justification for each decision. It is apparent from the hearing examiner's careful weighing of the factors that "the classification is based on a sound exercise of informed discretion rather than the mechanical application of a checklist or some other reflex." Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651 (2012).[11]

4. _Internet publication_. Doe argues that this is a relatively weak case such that his liberty and privacy interests

---

[11] For the same reasons, we find that the examiner's decision was not arbitrary and capricious as the grounds upon which it was based are those that "reasonable [persons] might deem proper to support it" (quotation omitted). FIC Homes of Blackstone, Inc. v. Conservation Comm'n of Blackstone, 41 Mass. App. Ct. 681, 684-685 (1996).

13

outweigh the public's need to have access to his sex offender registration information.  We disagree.  As discussed supra, Doe has a history of violence, has substance use issues, and continued to exhibit antisocial behavior while incarcerated, all of which supported his level three classification.  The Supreme Judicial Court explicitly has observed that "[w]here a sexually violent offender presents a moderate risk to reoffend and a moderate degree of dangerousness, Internet publication will almost invariably serve a public safety interest by notifying potential victims of the risks presented by the offender in their geographic area."  Doe No. 496501, 482 Mass. at 655.  The same holds true with respect to a violent high risk offender.  The hearing examiner's conclusion was well supported.

Judgment affirmed.

By the Court (Green, C.J.,
Henry & Englander, JJ.[12]),

Joseph F. Stanton

Clerk

Entered:  April 28, 2023.

---

[12] The panelists are listed in order of seniority.

14